1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA      :  09-CR-405

     -against-                    US District Court
                                  Central Islip, NY
FREDERICK CELANI,
               Defendant. :  January 22, 2010
- - - - - - - - - - - - - - X    11:45 am.

          TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE ARTHUR D. SPATT
          UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:

                    BENTON J. CAMPBELL
                    United States Attorney
                    One Pierrepont Plaza
                    Brooklyn, New York 11201
                    By:  RICHARD LUNGER, ESQ.
                    United States Attorney

For the Defense:    JAMES NEVILLE, ESQ.




Court Reporter:     Dominick M. Tursi, CM, CSR
                    US District Courthouse
                    1180 Federal Plaza
                    Central Islip, New York 11722
                    (631) 712-6108  Fax:  712-6124
                    DomTursi@email.com




          Proceedings recorded by mechanical stenography.
          Transcript produced by CAT.

2

1    (Call to Order of the Court.  Appearances stated

2    as indicated above.)

3    THE COURT:  I received a letter from

4    Mr. Neville, dated January 21, 2010, addressed to me,

5    which says:

6    *"Please accept the accompanying handwritten*

7    *letter to this honorable court from Mr. Celani.*

8    *Mr. Celani asked me to deliver the letter to the court*

9    *after he wrote it in my presence at the Metropolitan*

10   *Detention Center last Sunday, January 17, 2010.  The*

11   *court's indulgence is much appreciated."*

12   Annexed to this letter is a handwritten letter

13   from Mr. Celani dated January 17, 2010.  It says:

14   *"I met with Mr. Neville this morning.  He*

15   *informed me there will be a hearing on January 22.  He*

16   *also informs me you will remove him from the case.  My*

17   *motion addresses the denial of access to the court by the*

18   *BOP.  I wish to take -- I don't know what the next word*

19   *is -- of my defense 'if we cannot correct the problem.'*

20   *"If Mr. Neville cannot be my counsel, then I*

21   *withdraw my motion.  I do not, underlined do not, wish to*

22   *replace Mr. Neville, underlined.  I do not, underlined,*

*want another lawyer unless, underlined, you are giving us*

*more help.  Replacing Mr. Neville is an error.  It only*

*prolongs the case.  I want to -- I don't know what the*

3

next word is -- *my case with Mr. Neville as standby.  The last thing I want is another lawyer,"* underlined.

Well, I assume that means, Mr. Neville, that your client has withdrawn the motion to replace you.

MR. NEVILLE:  Yes, that does mean that, your Honor.

THE COURT:  Okay.

Are there any other matters before the court in Mr. Celani's case at this time?  Because I think we have already put this case on for a status conference on February 5.

MR. NEVILLE:  Yes, your Honor.  We can address further issues on that date.  However, I think it would be wise today to address one issue regarding Mr. Celani's access to law library materials.

It has come to my attention through Mr. Celani, that apparently, your Honor -- and this is upon information and belief -- apparently in the Metropolitan Correctional Center, in Manhattan, there is much more access for all inmates of law library materials.

Mr. Celani has informed me that at the MCC, in New York, in each unit at that facility there is a Lexis-Nexis legal research terminal or outlet that the inmates are permitted to use for up to an hour at a time, and then if the terminal is not being used by another

4

inmate, someone in Mr. Celani's shoes could go back and continue to work on the terminal.

Apparently, also at the MCC, in New York, Mr. Celani would have the ability to communicate with counsel -- with me -- via electronic mail.

Just this morning Mr. Celani has informed me of this.  And so I think that Mr. Celani and I would respectfully request that this honorable court consider informing the marshal's service of this fact, or at least having the marshal's service verify what I have said, and if possible to have Mr. Celani moved to the MCC, in New York.

I think the issue of access to law library materials for Mr. Celani is paramount in this case, and I believe that if Mr. Celani feels that he has good access to legal research, the legal research ability for himself, I think that would solve a big problem in the case, your Honor.

MR. LUNGER:  If I'm understanding the application, it is that Mr. Celani now wants to be moved to another facility, in Manhattan?

THE COURT:  That is what I just heard.

MR. LUNGER:  Your Honor, that is beyond my expertise in terms of whether that can happen and the marshals being able to retrieve him and make timely

5

appearance in this court.  So I will defer to the marshals
on that issue.

THE COURT:  Well, first, I do not have any
jurisdiction over the prison system of the federal courts.
That is solely within the jurisdiction of the Bureau of
Prisons.

Second, as I recall, Mr. Celani was moved from
the Nassau County Correctional Center, where he complained
that he didn't have enough time in the law library, to the
MDC in Brooklyn, the Metropolitan Detention Center.  That
was done by the Bureau of Prisons at my request.  And I
emphasize *request*.  Not direction, not complaint, and not
order.

Third, the Metropolitan Correction Center, in
Manhattan, is the depository institution for the Southern
District of New York, the United States District Court for
the Southern District of New York, and they keep it very
busy, as I understand it.  It is not the place of
incarceration for any prisoners from the Eastern District
of New York.  That is not to say that the Bureau of
Prisons could not decide to do this.

Fourth, it will present a problem for the
marshals service, who regularly go between the MDC,
Metropolitan Detention Center, in Brooklyn, and the
courthouses.  They do not go to the Southern District

courthouse, therefore it would have to be a departure, and a single vehicle would have to take him from the MDC to the courthouse because no one else going from the MCC to the Eastern District would be there. The marshals would have to send a vehicle to the MCC, in Manhattan, to the courthouse here, which would be a different type of activity for the marshals service. So it presents a lot of difficulties.

If you want to make a formal request to transfer him, what I would have to do is talk to the marshals service and see if they would even entertain this, first.

MR. NEVILLE: I understand, your Honor.

THE COURT: If I did, if they say they wouldn't, I wouldn't go further. Even if they said they would, accommodate him, then I would write a letter asking the Bureau of Prisons to consider it. But it is up to them to decide.

Before we do that, it is important that the marshals service have the facilities and the manpower to do this. It is a very unusual request, and one which I have never heard before.

MR. NEVILLE: Yes, your Honor. I understand.

Mr. Celani's concern of course is his access to, being able to do legal research.

This is a unique case, it is a complex case, and

7

Mr. Celani's position in the case is unique in the sense that he is extremely active in his defense.

And, quite frankly, I think he is always seriously considering making a respectful motion to this court that he represent himself. And I still think, quite honestly and candidly in my opinion, that is a real possibility in this case.

I have never before had a client like Mr. Celani. He is extremely active in his own defense. And I think, most respectfully, that in the event that Mr. Celani does insist on representing himself, I believe your Honor knows that after the appropriate admonitions and allocution, if you will, I believe that this honorable court could not prevent Mr. Celani from representing himself, if he so chose.

So I think it is very important that Mr. Celani have access to the Lexis terminals that, according to Mr. Celani, are available at the MCC, in Manhattan. This obviously is subject to verification. I don't doubt Mr. Celani, but obviously we would have to verify it.

So I understand what the court is saying. I obviously agree with the court that the logistical hoops, if you will, that will have to be jumped through to accomplish this are extremely important and must be respected. The marshals do a lot of work for the court

8

and their position has to be considered.

However, most respectfully to the marshals, I think Mr. Celani's constitutional rights are of paramount importance and I think it is important for Mr. Celani to have access and to be able to do the legal research that he requires.

Also, your Honor, on another topic having to do with Mr. Celani, this has to do with his health, it is my understanding that this court agreed that Mr. Celani should be provided a hearing aid. This goes back to when my predecessor counsel, Ms. Gaffey, was representing Mr. Celani. Apparently, the Bureau of Prisons was advised or encouraged -- I don't know whether this was an order or not; based on what your Honor has said, it probably was not you -- but that the Bureau of Prisons was apprised of Mr. Celani's needs for a hearing aid and that that problem has not been addressed as of yet. And Mr. Celani has reminded me today to bring that other very important topic up before the court.

THE COURT: In response to that, I say this again.

No. 1, I don't believe any constitutional rights are involved. I think he has been given every right that an incarcerated defendant is entitled to. And it is a stretch to even mention constitutional rights that he has

to have Lexis rather than Westlaw or anything like that. We haven't gotten to that yet. Who knows? With this Supreme Court, who knows?

Second, he was given the opportunity to have legal research. That is why he was transferred from the Nassau County Correctional Center. He is entitled to no greater rights than any other defendant who is incarcerated, no matter how conscientious he is, how hard working he is.

And, third, if he is foolish enough to try this case pro se, and I would give him the admonition and have another lawyer speak to him, which I do all the time, that is up to him.

And, finally, as far as a hearing aid that he is entitled to, if he will send me a note, I will so order again, or make a request -- I guess I have to make a request of the medical authorities in the Bureau of Prisons to provide him with a hearing aid immediately. That he is entitled to.

But I doubt very much if he is going to be transferred to the MCC in Manhattan.

MR. NEVILLE: Understood, your Honor. Nonetheless, respectfully, we would like to try to see if that could be accomplished, that Mr. Celani be transferred to the MCC.

THE COURT:  We can try anything, Mr. Neville.

MR. NEVILLE:  Thank you.

THE COURT:  This is the first time.  But who knows what can happen?  Miracles can happen.

MR. NEVILLE:  Nothing ventured, nothing gained.

THE COURT:  And it would probably take a miracle for this to happen.

MR. NEVILLE:  Your Honor, understood.

I will say, from my own personal experience with other clients and medical issues at the MDC, it seems as though it is always a tremendous problem to get medical attention of virtually any kind other than Tylenol pain-relief tablets, whether they be dental problems or --

THE COURT:  They don't give them Tylenol any more because Tylenol is in trouble now.  So maybe we have to switch to Excedrin or something else.

MR. NEVILLE:  Correct.  But I just put on the record, as I say anecdotally, in my own experience with clients at the MTC, getting medical attention is very tough.

THE COURT:  Okay.  You send me a letter immediately, fax it to me, saying that I have previously requested that he get his hearing aid, he was told he would get a hearing aid and he hasn't gotten it and he needs it immediately, and I will sign the request.

MR. NEVILLE:  Thank you, your Honor.

(Counsel and client confer.)

MR. NEVILLE:  Thank you, your Honor.

THE COURT:  Anything else?

MR. NEVILLE:  Nothing further from the defense.
Thank you.

THE COURT:  Anything else?

MR. LUNGER:  No, your Honor.

THE COURT:  Very well.  We will see you on the
5th of February, at 1:30.

(Proceedings adjourned at 12 pm.)