UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA     :   09-CR-405

      -against-                 US District Court
                                Central Islip, NY
FREDERICK CELANI,
              Defendant. :  January 26, 2012
- - - - - - - - - - - - - - X   11:30 am

        TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE ARTHUR D. SPATT
        UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:
                        BENTON J. CAMPBELL
                        United States Attorney
                        One Pierrepont Plaza
                        Brooklyn, New York 11201
                        By:  RICHARD LUNGER, ESQ.
                        United States Attorney


For the Defense:        JAMES NEVILLE, ESQ.
(By Telephone)




Court Reporter:         Dominick M. Tursi, CM, CSR
                        US District Courthouse
                        1180 Federal Plaza
                        Central Islip, New York 11722
                        (631) 712-6108  Fax:  712-6124
                        DomTursi@email.com




Proceedings recorded by mechanical stenography.
Transcript produced by CAT.

1          (Call to Order of the Court.  Appearances

2     stated as indicated above.)

3          THE COURT:  Hello, Mr. Neville.  Can you hear

4     me.

5          MR. NEVILLE:  Yes, I can.

6          THE COURT:  You are on a speakerphone in my

7     chambers.  Assistant United States Attorney Richard Lunger

8     is here.  My courtroom deputy, who is just leaving the

9     room but will be back, is here.  So is my law clerk Jayme

10    Feldheim and a court reporter.

11          Are you alone, Mr. Neville?

12          MR. NEVILLE:  Yes, I am, your Honor.

13          THE COURT:  This telephone call conference was

14    precipitated by two letters that you sent to me dated

15    January 20, 2012.

16          First of all, do you have the consent of your

17    client, Frederick Celani, to talk to me about this?

18          MR. NEVILLE:  Yes, your Honor.  I do.  I'm sure

19    that he would be very happy that I was going forward and

20    speaking to you on this issue.

21          THE COURT:  So you feel that he would waive his

22    presence for this telephone conference.

23          MR. NEVILLE:  Yes.  Absolutely.  I do.

24          THE COURT:  By the way, does Mr. Celani have any

25    relatives, close relatives, that come to see him?

1    MR. NEVILLE:  No.  He gets no visits at all, as

2  far as I know, your Honor.

3    THE COURT:  All right.

4    The first letter, both are dated January 20,

5  2012, states that Mr. Celani had at least one and possibly

6  three strokes in October of 2011.

7    MR. NEVILLE:  Yes.

8    THE COURT:  Wait a minute.  I'm being shown

9  another letter, that is dated January 25.

10    MR. NEVILLE:  Yes.  I can explain the confusion,

11  your Honor.  It is my mistake.

12    What happened was, the first letter I submitted

13  to the court was dated the 20th of January.  Then last

14  night, January 25, I submitted a second letter.

15    THE COURT:  Does that say, *"Further*

16  *developments"*?

17    MR. NEVILLE:  Yes, your Honor.

18    THE COURT:  That is the second letter.  Okay.

19    MR. NEVILLE:  I erroneously used the first

20  letter as a template, and I was making my changes last

21  night and I left the original date of January 20 on that

22  second letter.  Then I proceeded to actually file on ECF

23  two more letters.

24    I was in such a hurry to do it, I was a little

25  careless.  So I fixed the date on the second version of my

1  letter from last night to the 25th of January and then I

2  saw a typo in it so I fixed that and I submitted it a

3  third time last night.

4          So I apologize for the confusion.  But, as I

5  say, I was working quickly and it was close to midnight, I

6  guess.

7          THE COURT:  Which is the last letter?  The one

8  of the 25th?

9          MR. NEVILLE:  The last letter would be dated

10  January 25th.  And the text would be basically exactly the

11  same as the other two.  There was one mistake that I

12  failed to catch that I did correct.

13          But all three letters, the text of all three

14  versions, if you will, that I filed via ECF last night,

15  your Honor, are basically the same except for the mistake

16  of the date and one typo.

17          THE COURT:  Excuse me.

18          Do you have two separate letters, one January 20

19  and one January 25?

20          MR. NEVILLE:  Yes.

21          THE COURT:  Okay.  I got the January 20 and I

22  now have the January 25 letter.

23          MR. NEVILLE:  Very good.  That should be

24  correct.

25          So there are two letters.  One from the 20th and

1 one from last night, the 25th.

2        THE COURT:  Now, all of this is as a result of

3 the new world that we live in, the world without

4 secretaries.

5        Did you know that, Mr. Neville?

6        MR. NEVILLE:  I know that world all too well,

7 your Honor.

8        THE COURT:  It is called the *Email/Cell Phone*

9 *Syndrome*.  That is why we have these things.

10        However, going to your first letter, January 20.

11 You say:

12        *"Again I'm repeating that Mr. Celani had at*

13 *least one and possibly three strokes in October 2011 and*

14 *that speedy attention was given to him by the MDC."*

15        That is where he is now right.

16        MR. NEVILLE:  Correct.

17        THE COURT:  *"In getting him to Lutheran Hospital*

18 *within a short period of time saved his life."*

19        And then you go on to say:  *"His health is*

20 *steadily deteriorating."*

21        How long was he in Lutheran Hospital?

22        MR. NEVILLE:  I believe he was in Lutheran

23 Hospital only for a number of hours.  Then he was

24 transferred to Metropolitan Hospital, in Manhattan, and he

25 was there for I believe a day or two or three.  I don't

1  think more than three days.  I'm going to take an educated

2  guess and say it was two days he was in Metropolitan

3  Hospital in Manhattan and then he was returned to the MDC.

4        THE COURT:  Okay.  Going again through the

5  material parts of the letters.  This is the January 20

6  letter.

7        *"He's having trouble controlling the right side*

8  *of his body; lost about 90 percent of the vision in his*

9  *right eye; having speech and memory problems."*

10       MR. NEVILLE:  Correct.

11       THE COURT:  *"I think my client should be taken*

12  *for full neurological and circulatory examinations at a*

13  *hospital that is capable of such diagnoses.  I feel that*

14  *if some intervention is not taken soon, Mr. Celani may*

15  *become completely incompetent to aid in his defense or he*

16  *might simply have another stroke and die."*

17       I'm just going over the parts involving his

18  health.  That is what I'm interested in at this point.

19       MR. NEVILLE:  Yes, your Honor.

20       THE COURT:  You say that:

21       *"He intends to testify in his own defense.  And*

22  *that MDC has budget constraints and cut the heat in the*

23  *unit.  In the fourth floor, where he is housed,*

24  *temperature is approximately 50 degrees, making it much*

25  *harder on Mr. Celani.*

1          *"Also, the unhealthful diet provided to*

2    *Mr. Celani in the MDC is contributing to the chances that*

3    *he will have another stroke."*

4          You emphasize that he may not be able to help

5    his own defense.

6          MR. NEVILLE:  Yes.

7          THE COURT:  As I said, I'm only going over the

8    medical part of the case.  That is what I'm interested in.

9          MR. NEVILLE:  Yes, your Honor.

10          THE COURT:  Then you say in your January 20

11   letter, still the same letter:

12          *"Since at every turn the prosecution and other*

13   *government agencies have either ignored this defense*

14   *assertion"* -- well, I guess that is the Iranian thing.

15          MR. NEVILLE:  Yes.

16          THE COURT:  *"I need a healthy Frederick Celani*

17   *to assert the defense in this matter.  I respectfully*

18   *request that this honorable court order that Mr. Celani be*

19   *taken to a hospital for a full battery of neurological and*

20   *circulatory tests to determine what if anything can be*

21   *done to improve his condition and prevent another stroke.*

22   *If Mr.  Celani cannot receive adequate medical attention*

23   *in the prison system, then he should be freed on bond to*

24   *allow him to get the medical attention and treatment that*

25   *he needs and deserves along with the opportunity to gain a*

*level of nutrition that will enable him the to avoid*

*further strokes...*

     *"I am fearful that should Mr. Celani have*

*another stroke, such stroke will be fatal.  I consider*

*this condition very serious.  I'm asking for the honorable*

*court's intervention."*

     That is the end of the January 20 letter.

     Now, in the January 25 letter you start off by saying:

     *"I write this letter to inform this honorable*

*court of further developments concerning the physical*

*condition of Mr. Celani.  There is a status conference*

*scheduled for Friday, January 27, 2012, at 10, to discuss*

*his health, and I regret to inform this honorable court*

*that Mr. Celani has now lost sight in his right eye."*

     You told us that in the January 20 letter.

     MR. NEVILLE:  Apparently, according to Mr. Celani, it was about 90 percent or so loss of sight. And now he said, he told me in an email which prompted this letter last night to you, your Honor, that he has basically lost all sight in that right eye and the left eye now is beginning to show the same symptoms.

     THE COURT:  Okay.  I'm going to go through this and then I will talk to you.  Right now I'm just going through your letters.

1            MR. NEVILLE: Yes, your Honor.

2            THE COURT: To put them on the record.

3        *"Furthermore, the sight in the left eye is*

4 *deteriorating the same way that the now sightless right*

5 *eye did. Only two weeks ago Mr. Celani had sight in his*

6 *right eye. Today Mr. Celani suffered a fainting spell and*

7 *I fear he has experienced another stroke. Something must*

8 *be done immediately.*

9         *"I am respectfully requesting that the court*

10 *order that Mr. Celani be removed from the MDC and taken to*

11 *a bona fide, legitimate hospital so that he can be*

12 *examined by a neurologist and other specialist physicians.*

13         *"The MDC is completely inadequate to administer*

14 *any type of substantive or effective care for this man,*

15 *who is clearly experiencing very serious, life-threatening*

16 *symptoms. From the standpoint"* -- I don't want to go

17 through the documents he can't go over.

18         *"Mr. Celani must be seen by specialists that*

19 *only a hospital can provide.*

20         *"Please order that Mr. Celani be taken for*

21 *rigorous medical attention, something that he will never*

22 *receive at the MDC."* End of letter.

23         So that is his condition. He has lost sight in

24 his right eye and is losing sight in his left eye and he

25 has had several strokes. Right?

1          MR. NEVILLE:  Correct.

2          THE COURT:  Who did you speak to, if anyone, at

3     the MDC about this?

4          MR. NEVILLE:  I have spoken to no one at the

5     MDC, your Honor.  I received this information from my

6     client, both directly, face to face, and the most recent

7     information last night via an email from Mr. Celani.  I'm

8     in communication with him via email and he told me about

9     the latest deteriorating conditions in an email last

10    night.

11         THE COURT:  He has email access in his cell?

12         MR. NEVILLE:  I don't believe it is in his cell.

13    I'm not sure exactly what the physical arrangement is but

14    he does have access to an email.  It is a special system

15    in the prison.

16         It is not a total access to the internet but

17    there is a special system that the prisons use.  And yes,

18    I have access to him via that email system.

19         THE COURT:  Well, Mr. Neville, don't you think

20    the first request should be to the prison authorities to

21    give him additional medical care or to transfer him to a

22    hospital -- has that been done? -- before you go to me?

23    Because I have more limited authority over the prison.

24         MR. NEVILLE:  I understand, your Honor.

25         THE COURT:  Shouldn't the prison be told that he

1   is now losing sight of his other eye and has these

2   strokes; that he should be put into a hospital to

3   determine what is happening with him?  Isn't that the

4   first source that should be addressed?

5          MR. NEVILLE:  Yes, your Honor.

6          In fact that would be.  I guess I am shaped

7   somewhat from my experience with the MDC.  They don't

8   usually respond or pay much attention to my letters and I

9   went directly to you, your Honor.

10         But you are right, I should have done that

11  first.

12         THE COURT:  Well, I think you ought to do that

13  immediately and ask them for the same relief you are

14  asking of me.  And get the name of the person you speak to

15  and then report to me about that.  Because without even

16  requesting it, why should I interfere with this?

17         MR. NEVILLE:  Right.  Well said.  I understand

18  that.

19         I will do that.  I will get in touch with the

20  legal department at the MDC forthwith.

21         THE COURT:  And then find out the name, the

22  position, the title, and the response of the individual.

23  Tell them that this case is coming up, that he has had

24  these problems, that you are in communication with the

25  district judge about this, and the district judge said

1  that they should do something about this.

2           MR. NEVILLE:  Very well.  Thank you, your Honor.

3  I will do that.

4           THE COURT:  The district judge requests that

5  they should do something.  Not *said*; requests that they

6  should do something.

7           You better do that immediately.

8           MR. NEVILLE:  Yes, sir.  I will do that.

9           THE COURT:  Also, when you get a chance I would

10  like to know, for my own benefit, any cases which say that

11  I have the power to direct the prison to place somebody in

12  the hospital.

13           I assume if it is an emergency I have that power

14  but I have never seen cases on that.  I would want to do

15  it but would like to see some authority.

16           MR. NEVILLE:  I will look at that, your Honor.

17           THE COURT:  So I could use the some help.

18           Also, there are no medical reports before me.

19  Right?

20           MR. NEVILLE:  Correct.  I submitted no medical

21  reports.  I do have records from Metropolitan Hospital

22  that I did receive that I could show your Honor.  It is

23  quite a thick packet of records.

24           I also requested records from Lutheran Hospital

25  but I never received them.  Metropolitan responded very

quickly. I do have those records.

THE COURT: I would like to see them.

Now I would like to hear from Mr. Lunger as to what he knows about this and what is happening with the MDC.

MR. LUNGER: Well, your Honor, the government takes Mr. Celani's allegations quite seriously.

THE COURT: Can you hear him?

MR. NEVILLE: Yes, your Honor, I can.

THE COURT: Okay.

MR. LUNGER: When I received Mr. Neville's first letter on Friday evening, I was still in the office. It was after hours. I forwarded that. I have a contact at MDC whose name is Nicole McFarland.

THE COURT: Nicole McFarland?

MR. LUNGER: Yes. When I call the MDC, your Honor, my point of contact is always the legal department.

Nicole McFarland has essentially been the one I have contacted throughout this case. Any time Mr. Celani has had a medical complaint, that is the person I go to. And your Honor may recall that there have been complaints from time to time, and in my opinion they have all been taken seriously by MDC.

There have been instances where Mr. Celani has been brought off premises to deal with various ailments,

1  including a hearing issue.  And then most recently he was

2  brought off premises to be hospitalized.  So my experience

3  with MDC has been a positive one in terms of their

4  responsiveness.

5          With respect to this particular complaint, I

6  spoke with Miss McFarland I believe it was Tuesday of this

7  week.  She was looking into all the allegations that

8  Mr. Celani has made and specifically --

9          THE COURT:  About the sight?

10          MR. LUNGER:  About the sight.  About not being

11  on a proper diet.  On everything.

12          And my last communication with Ms. McFarland was

13  yesterday and she said she was trying to get in touch with

14  the doctor who is most knowledgeable about Mr. Celani's

15  condition.  Apparently, he was not at MDC yesterday.

16          I told Ms. McFarland that we had a hearing on

17  Friday -- this was all before last night's letter -- and

18  that I needed some information by today.  I have two phone

19  calls in to her and I expect to hear something later today

20  about this.

21          You know, I can say that I have been pleased

22  with the responsiveness I have been getting, and as soon

23  as I know something I will relay that to Mr. Neville and

24  to the court.

25          THE COURT:  I think that is very good.  I

1    appreciate that, Mr. Lunger.  And I think you have done

2    all you could possibly do to facilitate this situation.

3            Everyone is justifiably concerned about

4    Mr. Celani's health.  This has nothing to do with the case

5    or the crime or anything.  But he is a human being.  He is

6    entitled to have medical aid to help him survive if these

7    things are as pressing as I'm told they are.

8            What I think should be done is, I think we

9    should keep this hearing on for tomorrow and we will know

10   more by then.

11           Mr. Lunger?

12           MR. LUNGER:  I hope to.

13           THE COURT:  Number one, you will know more.

14           Number two, you are going to find out cases that

15   say I have the power to do this.

16           MR. NEVILLE:  Yes, your Honor.

17           THE COURT:  Okay, Mr. Neville?

18           I have looked.  I haven't found much.  But it is

19   there, I'm sure.

20           MR. NEVILLE:  I will see what I can find.

21           THE COURT:  Then we will know more from

22   Mr. Lunger about what Miss McFarland said about whether

23   they will take care of the situation; whether they should

24   bring him to the hospital for a complete checkup to make

25   sure he is going to live, and to preserve his sight if

1  possible.

2          MR. NEVILLE:  Yes, your Honor.  Thank you.

3          THE COURT:  So we are going to do that.  If

4  nothing helps and he still has a problem and needs to go

5  to the hospital and the MDC does not send him to the

6  hospital, then I have to seriously consider directing

7  that, if I have the power to do it.

8          MR. NEVILLE:  Understood.

9          THE COURT:  So we will see you tomorrow.

10          MR. NEVILLE:  Yes, your Honor.

11          I will bring the records from Metropolitan

12  Hospital with me, also.

13          THE COURT:  10 o'clock tomorrow morning.

14          MR. NEVILLE:  Thank you very much, your Honor.

15          And I thank Mr. Lunger for his efforts also.  I

16  appreciate that.

17          THE COURT:  I want to thank you, Mr. Neville.  I

18  think you have gone above and beyond the duty that an

19  attorney has for a client.  It is greatly appreciated.

20          MR. NEVILLE:  Well, thank you, your Honor.  Your

21  kind words mean a lot to me.  I appreciate it.

22          THE COURT:  You are entitled to them.  We will

23  see you tomorrow morning.

24          MR. NEVILLE:  Thank you, sir.

25          (Proceedings adjourned at 11:55 am.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25