UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA    :  09-CR-405

    -against-                 US District Court
                             Central Islip, NY
FREDERICK CELANI,
            Defendant. :  October 16, 2009
- - - - - - - - - - - - - - X  3:30 pm

       TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE ARTHUR D. SPATT
       UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:
                        BENTON J. CAMPBELL
                        United States Attorney
                        One Pierrepont Plaza
                        Brooklyn, New York 11201
                        By:  RICHARD LUNGER, ESQ.
                        United States Attorney

For the Defense:        JAMES NEVILLE, ESQ.

Also Present:           MATTHEW GALIOTO - FBI

Court Reporter:         Dominick M. Tursi, CM, CSR
                        US District Courthouse
                        1180 Federal Plaza
                        Central Islip, New York 11722
                        (631) 712-6108  Fax:  712-6124
                        DomTursi@email.com

Proceedings recorded by mechanical stenography.
Transcript produced by CAT.

1    (Call to Order of the Court.  Appearances stated

2    as indicated above.)

3         THE COURT:  What is happening here, Mr. Lunger?

4         MR. LUNGER:  Your Honor, prior to the last

5    status conference, the government wrote to Mr. Neville and

6    told him that we have available to turn over a compact

7    disk which contains a number of documents that had been

8    seized from the offices of Rainmaker, which was the

9    company that the government alleges the defendant headed

10   up.

11        That disk is ready to be turned over.  It has

12   been for over a month now.  But one of the things we have

13   asked the defendant to do is to sign a stipulated

14   protective order.

15        And the reason we have done that is, there are

16   certain confidential information of victims in these

17   documents, things like addresses, social security numbers,

18   and the like, which we obviously don't want going into the

19   prison facility.  I believe the defendant is in MDC right

20   now.

21        I have spoken to Mr. Neville just a few minutes

22   ago and he has told me the defendant is not willing to

23   sign this order.  So the government proposes that it be

24   submitted to your Honor for consideration, and the

25   defendant can make any objections he wants to it but that

1   it can be adjudicated along those lines.

2          Secondly, at the last status conference I

3   advised the court that the government, specifically the

4   FBI, was in the process of indexing computer data that was

5   contained on 11 hard drives, again that had been seized

6   from the Rainmaker premises.  My understanding is that

7   three out of those 11 hard drives have now been indexed in

8   a manner that can be searched.

9          Before they are turned over to the defense, two

10  things need to happen.  One, we have an analyst at the FBI

11  who has been walled off from the case whose job it will be

12  to go through those hard drives to make sure there is no

13  attorney-client privileged information on them.

14         The court may recall, last time we were

15  concerned that at least two of the hard drives seized may

16  have been used by practicing attorneys.  So what is going

17  to happen is, next week the analyst is going to start

18  going through these three hard drives to determine whether

19  there is any attorney-client privileged information.  If

20  there isn't, they will be turned over to the defense.  And

21  again, we would like these hard drives to be subject to

22  the protective order.

23         So as a preliminary matter, we believe that the

24  court would need to consider whether a protective order is

25  appropriate in the first instance in this case.

1          THE COURT:  What is the nature of the charge in

2    the case?

3          MR. LUNGER:  The charge is, it is a Ponzi

4    scheme, your Honor, that is being alleged.  So it is a

5    one-count indictment at this point alleging a wire fraud

6    conspiracy.

7          THE COURT:  Mr. Neville?

8          MR. NEVILLE:  Your Honor, first, in terms of the

9    protective order.

10         My client respectfully takes the position that

11   there is no secret to any of the information that was

12   seized from this location, the search by the government,

13   and that most respectfully our position is we have a right

14   to examine all of the materials that were present in this

15   office.

16         Mr. Celani was working in this office, was

17   spending many hours in that office, and was in fact privy,

18   either explicitly or certainly potentially privy, to

19   everything, all materials that were in that office.

20         So it makes no sense that now, when Mr. Celani

21   is in a position to defend himself from these serious

22   charges, that the government place an obstacle so that we

23   cannot examine all of the materials and pick and choose

24   what we believe potentially could be material that we

25   could use for Mr. Celani's defense.

1    Secondly, the hard drives that Mr. Lunger has

2 explained to the court that are being prepared by an FBI

3 analyst, as Mr. Lunger said there is an FBI analyst who

4 is, as Mr. Lunger stated, walled off from this case where

5 that analyst is examining for possible attorney-client

6 privileged information, that Mr. Lunger says there may

7 have been practicing lawyers working in that office.

8    In fact there were practicing lawyers in that

9 office, and Mr. Celani again was privy to everything that

10 was going on in the location.  So it makes no sense, we

11 state respectfully, that we now be prevented from seeing

12 everything that Mr. Celani was seeing and could have been

13 seeing prior to his arrest.

14    So we state respectfully that this is a

15 mechanism, whether it is intentional or not, but it is a

16 mechanism that prevents us, it is an obstacle that the

17 government is constructing that is preventing Mr. Celani

18 and counsel from properly preparing his defense.

19    THE COURT:  When you say that you are not being

20 given all the material, I didn't hear anything about that.

21 All they say is they want to mark it confidential or under

22 a protective order so that you won't distribute it to the

23 press or to Mr. Celani's family or to the Republican Party

24 or -- who else? -- Rush Limbaugh.  That is all they say.

25 They are going to give you all the material.

1    MR. NEVILLE:  Then perhaps --

2    THE COURT:   I think isn't this so --

3    MR. LUNGER:  Our primary concern, your Honor,

4    is, we don't want the information to go back to MDC.  That

5    is our primary concern.

6         The way the protective order is set up is that

7    both the defendant and his lawyer can review it.  But at

8    the end of the day, once the defendant is done reviewing

9    the materials, we don't want that privileged information

10   to go back to the jail.

11        THE COURT:  But it can go to the attorney.

12        MR. NEVILLE:  Absolutely, your Honor.

13   Absolutely.  I'm ready to hand him the disk.  He can have

14   the disk.  Keep it under lock and key in the office.

15        THE COURT:  You are going to get all the

16   material.  It is not a pick and a choose.  You will get

17   everything.

18        MR. NEVILLE:  I understand, your Honor.  Then it

19   was my misunderstanding.

20        Is it then permissible that I bring materials to

21   the jail to review them with Mr. Celani?

22        THE COURT:   Certainly.

23        MR. NEVILLE:  Potentially.  But then bring them

24   back with me and not leave anything with him.

25        THE COURT:  That's right.  You can bring it to

1    the jail.

2            MR. NEVILLE:  That is fine then, your Honor.  It

3    was my misunderstanding then.

4            We are prepared to then sign the protective

5    order.

6            THE COURT:  Okay.  What else is happening?

7            MR. LUNGER:  That is essentially the latest,

8    your Honor.

9            Like I said, the next step will be to go through

10   these hard drives and as the analyst goes through them, if

11   there is any allegedly privileged information, it will be

12   exported from the hard drive but what remains will go over

13   to the defendant.  Anything that is exported, if your

14   Honor so desires we can submit in camera and your Honor

15   can decide whether it is appropriate to be turned over.

16           I would like nothing more than to be able to

17   hand those hard drives over to Mr. Neville and be done

18   with it.  But we are proceeding with caution because we

19   don't know what is on there yet.

20           THE COURT:  Anything that you extract or delete,

21   you will show to me.

22           MR. LUNGER:  Yes, your Honor.

23           THE COURT:  And I will decide whether it goes to

24   them or not.

25           MR. LUNGER:  Yes, your Honor.

THE COURT: So where are we going from here? Assume that that happens. How much time do we need now? Are we near a trial in this case?

MR. LUNGER: I don't think so.

Until all the hard drives are turned over, your Honor -- and I have been told by FBI that it will probably be at least another two or three weeks until all of the hard drives have been indexed, meaning it will take two or three more weeks to get the hard drives in a state where an analyst can sit down and start searching, putting search terms into these hard drives and be able to determine whether there is anything more on them.

So in terms of a trial date, I don't know if we are in a position to set one just yet, your Honor.

THE COURT: What do you say, Mr. Neville?

MR. NEVILLE: Your Honor, I wanted to ask the court on another matter whether the circuit made any contact with the court sending to the court a proposed order.

If your Honor recalls, I think two court dates ago I brought up the idea of having this case budgeted; that I would prepare a budget for the case because of all the discovery; that I had spoken with Mr. Tritz in the Circuit Executive's office, he deals with CJA cases and death penalty cases that need to be budgeted and what they

term makeup cases or cases with a large volume of

discovery that they are encouraging judges to potentially

order be budgeted from a standpoint of the CJA counsel.

And I spoke with an investigator.  Your Honor

approved up to $2,500 for an investigator.  But I spoke

with a law student or a paralegal or an associate attorney

to work with me on the case.  And your Honor asked how

much that would be, how much those people would be paid,

et cetera.  I spoke with Mr. Tritz approximately two weeks

ago and he informed me that he would be sending to the

court a proposed order and that proposed order would lay

out or outline all of the potential expenses in the case.

I just wondered if the court had received that

proposed order.

THE COURT:  Not that I know of.  I did not

receive it.  You better call Mr. Tritz and tell him to

send it right away because I will sign such an order

giving you the right to have assistance.

MR. NEVILLE:  Thank you, your Honor.

Finally, your Honor, I wanted to just thank the

court.  Mr. Celani thanks the court for being moved from

Nassau County to the MDC, in Brooklyn, where Mr. Celani is

able to access the law library.  However, respectfully,

Mr. Celani is asking the court to intervene with the MDC,

to contact the MDC indicating that Mr. Celani needs more

1    time in the law library there.

2              I will remind the court.  The court may remember

3    that Mr. Celani, in addition to this case, this criminal

4    matter, that he is interested in participating vigorously

5    in his defense.  If you recall, there was a time when

6    Mr. Celani was making application to represent himself in

7    this case.  And he has agreed to have me represent him but

8    he still is very much involved in the preparation of his

9    defense.

10             But additionally, your Honor, Mr. Celani has at

11   least two civil matters that he is representing himself

12   on.  There is a matter where the Securities and Exchange

13   Commission sued Mr. Celani.  And also Mr. Celani is a

14   plaintiff in another civil lawsuit in this courthouse, I

15   think before Judge Bianco.

16             So Mr. Celani is respectfully requesting that

17   this court would consider contacting the education

18   department at the MDC where Mr. Celani was told that if

19   the court contacts the education department and

20   understands from the court that Mr. Celani needs more time

21   in the law library, that the education department will

22   approve Mr. Celani getting more time in the law library

23   for his various cases.

24             THE COURT:  Well, you send me a letter telling

25   me what time he gets now and how much he wants.  I will

1   review that and if I think it is advisable, I will so

2   order it.

3              MR. NEVILLE:  Thank you, your Honor.

4              THE COURT:  But of course you know it is only a

5   recommendation.

6              MR. NEVILLE:  Yes, your Honor.

7              THE COURT:  It is up to the Bureau of Prisons

8   what they want to do in their facility.

9              MR. NEVILLE:  That is what the MDC is looking

10  for, some kind of input from the court that the court

11  would approve.

12             THE COURT:  You sent me a letter requesting

13  that.

14             MR. NEVILLE:  Thank you.

15             THE COURT:  Anything else, Mr. Neville?

16             MR. NEVILLE:  Nothing further.  Thank you, your

17  Honor.

18             THE COURT:  How much time do you think we should

19  have until the next status conference?

20             MR. LUNGER:  Perhaps 45 days, your Honor.

21             MR. NEVILLE:  That is fine with us, your Honor.

22             THE COURTROOM DEPUTY:   December 4 at 1:30.

23             THE COURT:  Friday, December 4, at 1:30?

24             MR. NEVILLE:  Fine.  Thank you.

25             MR. LUNGER:  Fine, your Honor.

1       THE COURT:  Does your client understand about

2   waiving speedy trial, Mr. Neville?

3       MR. NEVILLE:  Yes, he does, your Honor.  We will

4   sign the document to waive speedy trial.

5       MR. LUNGER:  Your Honor has also designated it a

6   complex case.

7       THE COURT:  Notwithstanding that I always like

8   to get a signed waiver and to make a pronouncement.

9       The court notes that the defendant, his counsel,

10  and the prosecutor have signed a waiver of speedy trial

11  form.  And I am signing an order excluding the time from

12  today, October 16, 2009, to December 4, 2009, from the

13  operation of the Speedy Trial Act.  I do this not only

14  because this is a complex case but with the consent of the

15  defendant, in the interests of justice under the

16  circumstances involving discovery here, and in the public

17  interest of a fair trial.

18      We will see you on December 4.

19      MR. LUNGER:  Thank you, your Honor.

20      MR. NEVILLE:  Thank you, your Honor.

21      Just for the record, Mr. Celani has prepared I

22  think his signature.  Mr. Celani's signature is also

23  necessary for the protective order.  So we are prepared to

24  sign that now.

25      THE COURT:  Go ahead.

1          Let the record indicate that the order has been

2    signed.  Correct?

3               MR. NEVILLE:  Correct.

4               MR. LUNGER:  Yes.  It is signed by the defendant

5    and both counsel.

6               THE COURT:  Thank you very much.

7               (Proceedings adjourned at 3:50 pm.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25