UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA     :   09-CR-405

      -against-                  US District Court
                                 Central Islip, NY
FREDERICK CELANI,
                Defendant. :   February 18, 2011
- - - - - - - - - - - - - - X   11:40 am

        TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE ARTHUR D. SPATT
        UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:

                        BENTON J. CAMPBELL
                        United States Attorney
                        One Pierrepont Plaza
                        Brooklyn, New York 11201
                        By:  RICHARD LUNGER, ESQ.
                        United States Attorney

For the Defense:

                        FREDERICK CELANI, Pro Se
                        JAMES BRANDEN, ESQ.

Legal Advisor:          RICHARD A. MILLER, ESQ.

Court Reporter:         Dominick M. Tursi, CM, CSR
                        US District Courthouse
                        1180 Federal Plaza
                        Central Islip, New York 11722
                        (631) 712-6108  Fax:  712-6124
                        DomTursi@email.com

        Proceedings recorded by mechanical stenography.
        Transcript produced by CAT.

1    (Call to Order of the Court.)

2         MR. LUNGER:  Rick Lunger.

3         MR. MILLER:  Richard Miller, legal advisor.

4         MR. LUNGER:  With me at counsel table is Matthew

5    Galioto from the FBI.

6         MR. BRANDEN:  Jim Branden here for Mr. Celani.

7    He is seated to my right.

8         THE COURT:  Well, I received two letters from

9    Mr. Celani -- at least two letters -- in which he says he

10   wants you to withdraw.

11        Did you get that?

12        MR. BRANDEN:  I was cc'd on of those letters,

13   judge.  And I believe at this point that Mr. Celani and I

14   can no longer have an active attorney-client relationship.

15        Our communication has broken down.  And from the

16   history of this case and from having spoken with him

17   previously, I believe that he should be permitted to

18   represent himself, which is his stated desire.

19        THE COURT:  Any objection to that, Mr. Lunger?

20        MR. LUNGER:  Your Honor, we think it is

21   important for there at least to be some sort of legal

22   advisor or standby counsel, however the court would phrase

23   it, to be involved in this case; particularly because, as

24   the court is aware, there has been voluminous discovery

25   produced in this case which consists of computer images

1  from at least approximately 11 computers, records of

2  victims that contain sensitive personal information.

3  Your.

4         Honor has issued a protective order which

5  directs defense counsel to keep this personal information

6  under lock and key.  That prohibits it from going into the

7  jails.

8         So we believe, at least from a discovery

9  standpoint, there may be other reasons as well why standby

10  counsel or some sort of legal advisor should be appointed

11  here, but certainly from a discovery standpoint we believe

12  it is imperative to have a defense counsel present and

13  available to Mr. Celani, if for no other reason but to be

14  the custodian of this very sensitive victim information,

15  which the court has recognized is sensitive and has issued

16  a protective order governing the various uses of such

17  information.

18         MR. BRANDEN:  Judge, I don't mean to cut off the

19  prosecutor, but Mr. Celani has indicated to me that he

20  understands the government's concern in this regard.  As

21  long as he is his own lawyer, he does not object to having

22  standby counsel for those purposes.

23         THE COURT:  Okay.  We have had this situation,

24  Mr. Celani has indicated that he wanted to represent

25  himself.

1    You don't hear me, Mr. Celani?  Do you want to

2  come up here?

3         THE DEFENDANT:  Could I?

4         THE COURT:  You are coming up with -- your

5  friends are coming up with you.

6         MR. BRANDEN:  His ear plugs were broken apart

7  somehow during today's travel, I guess, so he has just put

8  them back together.

9         THE COURT:  Mr. Celani, generally when a

10  defendant states that he or she wants to represent

11  themselves, I go into a long dissertation on why that is

12  the absolute wrong thing to do; that you are not an

13  attorney; that you are going to be talking to the jurors

14  personally, you being the one involved; and you are not

15  experienced in some of the nuances that take place in a

16  courtroom.  It is just in my opinion a very, very damaging

17  thing for a defendant to do.

18         That is my opinion.  I think I have expressed

19  this several times already.

20         THE DEFENDANT:  Yes, sir, you have.

21         THE COURT:  Notwithstanding that, you want to

22  represent yourself.

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Well, I'm going to permit you to

25  withdraw, Mr. Branden, with the thanks of the court.

1          MR. BRANDEN:  Thank you, judge.

2          THE COURT:  Okay.  Now I'm going to appoint a

3    legal advisor.

4          You are very, very fortunate, Mr. Celani,

5    because Richard Miller is not only an experienced criminal

6    defense lawyer, he is a nice guy.

7          THE DEFENDANT:  Well, then, we will get along

8    fine.  I'm a wonderful person.

9          THE COURT:  You have this terrific combination,

10   so you are going to be very fortunate.  If you have any

11   questions, you call and speak to Mr. Miller.  He is very

12   observant.  He comes to see you and things like that.  So

13   you are very fortunate.

14         THE DEFENDANT:  Just for the record, your Honor,

15   MCC is much easier to set up email contacts than calling

16   because I don't have funds to be calling.

17         MR. BRANDEN:  You mean the MDC, where you are

18   presently?

19         THE DEFENDANT:  Yes, the MDC.  I forgot.

20         THE COURT:  Okay.  So here is where we are.

21   Mr. Branden is going to be excused, again with the thanks

22   of the court.

23         MR. BRANDEN:  I appreciate it.

24         THE COURT:  I really appreciate your help.

25         MR. BRANDEN:  Certainly.  Thank you, judge.

1          THE DEFENDANT:  Your Honor, if I may.  If I may

2     please.

3          The last time we were here, you ordered that

4     Mr. Neville turn over his file to Mr. Branden.  That has

5     yet to occur.

6          THE COURT:  That has not occurred?

7          THE DEFENDANT:  No, sir.

8          MR. BRANDON:  I will speak to that.

9          That has not occurred.  And I received a phone

10    call from a lawyer that was working with Mr. Neville, not

11    me but some other lawyer, whom I do not know, who

12    indicated that he had documents that he wanted to forward

13    to me.

14          I called that person back more than one time,

15    and his phone is full of messages.  We can't leave any

16    additional message.  So still I have not received all of

17    the discovery.  And I will talk with Mr. Miller about

18    that.

19          THE COURT:  You want to make sure that is done

20    right away.

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Mr. Miller.

23          MR. MILLER:  Yes, sir.

24          THE COURT:  Do you want to call Mr. Neville and

25    tell him I'm directing him to send all those papers over?

1          Do you want the papers, Mr. Celani?

2          THE DEFENDANT:  Yes, sir.

3          And I have one other request, your Honor.

4          THE COURT:  Sure.

5          THE DEFENDANT:  It is a bit odd.

6          Mr. Neville hired a man named John Sorocco.  He

7   is an attorney somewhere in Brooklyn.  Apparently, he was

8   not going to act as an attorney in the case.  I was told

9   he was going to be an investigator.  And then

10  unfortunately the man had a mental breakdown and went into

11  an mental hospital, and all those documents I gave to him

12  have disappeared.

13         I would like someone to ask Mr. Neville to get

14  in touch with Mr. Sorocco or his family and get my

15  documents back.

16         THE COURT:  Mr. Miller, would you take care of

17  that, please?

18         MR. MILLER:  I will try to do my best, judge.

19         THE COURT:  And let me know and let Mr. Lunger

20  know if we can help out.

21         MR. MILLER:  All right, your Honor.

22         THE COURT:  I want those papers delivered

23  immediately.

24         MR. LUNGER:  Your Honor, just so I'm clear on

25  the record.  The files and computer media that is

1   presently in Mr. Neville's custody is going to be turned

2   over to Mr. Miller. Is that correct?

3            THE COURT: No. To Mr. Celani.

4            MR. LUNGER: Your Honor, that would violate your

5   Honor's protective order.

6            Those documents have sensitive information that

7   is not to be permitted in the jail.

8            THE COURT: Did I sign such an order?

9            MR. LUNGER: You sure did, your Honor.

10            THE COURT: Do you have a copy of it there?

11            MR. LUNGER: Absolutely.

12            (There was a pause in the proceedings.)

13            THE COURT: You are familiar with this order,

14   Mr. Celani?

15            THE DEFENDANT: Yes, sir, I am.

16            THE COURT: According to this order, which I

17   signed on October 16, 2009, defense counsel may receive

18   and inspect all discovery material subject to the terms

19   and conditions of this order.

20            And then it goes on to say that all discovery

21   materials received by defense counsel shall be stored in

22   defense counsel's office, in a locked room, and shall be

23   shredded by defense counsel upon the conclusion of this

24   case and any appeals; that all these records must be

25   stored at defense counsel's office in a locked room and/or

1    on one or more computers that are not connected to the

2    internet.

3           The order also provides that defense counsel

4    shall provide the United States with the name, address,

5    Social Security number and date of birth of any civilian

6    expert or paralegal that the defense wishes to have access

7    to the discovery material, 14 days before giving such

8    individual access.

9           MR. MILLER:  Your Honor, I have to say I'm not

10   familiar with this case yet and I don't honestly know if I

11   think that is appropriate.

12          THE COURT:  Well, I have signed this order.

13          You may have to make a motion to vacate it,

14   then.  I signed this order and it says:

15          *Inspection by the defendant.  Defendant may*

16   *review discovery materials solely for the purpose of*

17   *assisting defense counsel.  Defendant may take notes while*

18   *reviewing discovery materials only in the presence of*

19   *defense counsel at the USAO or the Metropolitan Detention*

20   *Center.  And all notes taken by the defendant in the*

21   *presence of defense counsel must be relinquished to*

22   *defense counsel prior to leaving the MDC.*

23          MR. MILLER:  May I have a moment, your Honor?

24          THE COURT:  Yes.

25          (Mr. Miller and defendant confer.)

1    MR. MILLER:  Thank you, your Honor.

2    THE COURT:  Incidentally, Mr. Miller, this order

3    was signed by Mr. Lunger, by James Neville, by the

4    defendant, Frederick Celani, and then so ordered by me.

5    MR. MILLER:  I see.

6    THE COURT:  It was all agreed upon.

7    MR. MILLER:  It is very much out of the

8    ordinary, your Honor.

9    THE COURT:  It is.

10    And it says further:

11    *In no event shall the defendant, defense*

12    *counsel, paralegal or civil experts disclose or describe*

13    *any of the personal information to any other person other*

14    *than the government.*

15    I think you ought to give a copy of this to

16    Mr. Miller.

17    MR. MILLER:  Thank you, sir.

18    MR. LUNGER:  I just did, your Honor.

19    THE COURT:  If you think that this order is

20    improper, illegal, unwise or for any other reason you can

21    move --

22    MR. MILLER:  Yes, your Honor.  I appreciate

23    that.

24    THE COURT:  -- to vacate portions of the order.

25    MR. BRANDEN:  I appreciate that.  Thank you.

1   THE COURT:  But right now this order is it.

2   MR. MILLER:  All right.

3   THE COURT:  Signed by the defendant.

4   MR. MILLER:  Well, I hope he knew what he was

5   doing.  I will take it, I will review it, and speak to my

6   client about it and we will figure out what to do.

7   THE COURT:  Okay.

8   THE DEFENDANT:  Your Honor, if I may.

9   When that order was signed, if you recall, the

10  theory was that we were going to be coming, I don't know

11  if it was here or someplace else, and Neville was going to

12  be there and we were going to review all these documents.

13  On one occasion we came to the US Attorneys

14  office, I don't know if it is downstairs or upstairs,

15  somewhere in this building.  We never did look at those

16  disks.  And to this day I have never laid eyes on them.  I

17  have never seen any discovery in this case.

18  Furthermore, the way Neville explained it to me

19  was, whatever the big secret is that Mr. Lunger has was

20  going to be bifurcated from the rest of the material.  So

21  anything I signed, I signed under Neville's stipulation to

22  me as to what it was going to be.

23  At that particular time I didn't even have

24  hearing aids.  I didn't even know what was going on in

25  this room.

1    So I would object to anyone who would say that I

2  agreed to this.  I basically did what counsel told me to

3  do.

4    THE COURT:  Well, you can talk to Mr. Miller

5  about that and he can incorporate, if he so desires, that

6  into part of the motion.

7    THE DEFENDANT:  Thank you, your Honor.

8    MR. LUNGER:  Your Honor, just by way --

9    THE COURT:  You have never received discovery.

10    MR. LUNGER:  That is not true, your Honor.

11    What Mr. Neville showed to this defendant I

12  can't speak to because it is attorney-client privileged

13  information.  I'm not privy to what discovery Mr. Neville

14  may or may not have shown this defendant.  But all of the

15  discovery to date has been turned over to counsel.

16    The protective order is simply -- it is not to

17  prevent access to information by the defendant.  The

18  defendant, as your Honor read, can review the discovery

19  material, both written on paper and also computer

20  material.  What the protective order is meant to do is to

21  make sure that sensitive information doesn't make its way

22  into the jail.

23    We have victims who have turned over -- during

24  the course of this scheme there were over 100 victims who

25  provided sensitive information, like Social Security

numbers, home addresses, computer passwords, and the like.
That cannot get into the jails, your Honor.  We have an
obligation to the victims.

Mr. Neville agreed to the protective order
because he understood, like I do, that that information is
not -- it is not proper to be in a jail.  It doesn't
further the defense in any way for victim number one to
have his or her Social Security number and date of birth
in the possession of this defendant or any other inmate at
the MDC.

In terms of access to discovery, all of the
discovery has been produced pursuant to this order.  None
of it has been redacted, none of it has been sanitized,
because there has always been a defense counsel in place
to take custody of it and make sure that it is not used in
an improper way.

THE COURT:  Apparently, Mr. Neville hasn't
turned over the discovery so we want to get that done
immediately.

And I want to know about that, Mr. Miller.

MR. MILLER:  Yes, sir.  I understand.

THE COURT:  If necessary I will communicate with
Mr. Neville.  I would prefer not to do that.

MR. MILLER:  Thank you.  I appreciate that, your
Honor.

1    THE COURT:  So where are we now?

2    MR. LUNGER:  Yes, your Honor.

3        We are in the process of preparing a superseding

4    indictment to present to the grand jury.  We were hoping

5    we would have the indictment returned by today and that

6    the defendant could be arraigned on it today.

7        In the course of our preparation, about two

8    weeks ago we realized that there were some documents we

9    subpoenaed that we never received.  We have since received

10   those documents.  In fact we received them today.  We are

11   going to review them, they are not voluminous, and we hope

12   to supersede the indictment to add an additional scheme,

13   probably next month.

14       In the interim I have given a proposed plea

15   agreement to Mr. Neville to deliver to, now Mr. Celani who

16   is representing himself, and that plea agreement would

17   provide coverage not only with respect to the present

18   indictment but with respect to any charge that we would be

19   bringing under the superseding indictment as well.

20       The plea agreement is open, will remain open,

21   until March 4.

22       THE COURT:  Have you received the plea

23   agreement, Mr. Celani?

24       THE DEFENDANT:  No, your Honor.  And of course I

25   question the fact why he gave it to Mr. Neville when he

1    knew two months ago --

2            MR. LUNGER:  I'm sorry.  I meant to say

3    Mr. Branden.

4            THE COURT:  Mr. Brandon, do you have that?

5            MR. BRANDEN:  I just got it this morning.

6            THE COURT:  Do you want to give it to the

7    defendant.

8            MR. LUNGER:  I'm sorry, your Honor.  I misspoke.

9    Mr. Branden.

10           THE COURT:  We are using the doctrine of

11   self-help here.

12           Okay.  You have the proposed plea agreement?

13           THE DEFENDANT:  Yes, sir.  I didn't request it.

14   I have no interest in it.

15           THE COURT:  You have no interest in it.

16           THE DEFENDANT:  No, sir.

17           THE COURT:  Okay.

18           MR. LUNGER:  That's fine.  I would just like the

19   record to reflect that it was turned over.

20           MR. MILLER:  I will discuss the plea agreement

21   with my client, and obviously he can decide what he wishes

22   to do with it, your Honor.

23           THE COURT:  Of course.  That is still up to him.

24   There will be no pressure put on him at any time.  No

25   pressure to plead or anything like that.

1        Do you understand that?

2        THE DEFENDANT:  Yes, I do, your Honor.  But I

3   have one comment to make I want to put on the record.

4        The Second Circuit recognizes that in cases like

5   this, where the defendant represents themself, that

6   standby counsel cannot enter into any type of motion on

7   behalf of the defendant.  A standby counsel is there to

8   advise the defendant.  And I want to make sure that

9   anything that is done is done by me, personally.

10        THE COURT:  You are right.

11        THE DEFENDANT:  Thank you.

12        THE COURT:  Because you are now representing

13   yourself.

14        You finally got your way, Mr. Celani.

15        THE DEFENDANT:  Thank you, your Honor.  I

16   appreciate it.

17        THE COURT:  Despite my protestations about four

18   times.

19        THE DEFENDANT:  Thank you, sir.

20        THE COURT:  Okay.  Anything else at this time?

21        How much time do we want to put this over?

22   Let's do it after the superseding indictment.

23        MR. LUNGER:  Yes, your Honor.

24        The next date that was proposed was April 15 so

25   that we feel that that is a status conference date, that

1   is probably a reasonable one.  I think there is a fair

2   chance that Mr. Celani will be arraigned on the

3   superseding indictment before April 15 but at least that

4   is a control date.

5            THE COURT:  Mr. Celani, is that date acceptable

6   to you?

7            THE DEFENDANT:  Yes, sir.  It is fine.

8            THE COURT:  Okay.  Do you understand about

9   waiving speedy trial?

10           THE DEFENDANT:  Yes.  I waive the speedy trial

11  and I'm ready to proceed to the 15th.

12           THE COURT:  Have you signed the waiver form?

13           THE DEFENDANT:  No, but now I will.

14           MR. MILLER:  I find it a little bit difficult

15  being standby counsel.  Your Honor expects that I will do

16  my best to talk to my client and review all the issues in

17  the case.  But does that mean that I am not responsible

18  for filing motions?  Because he is going to file by

19  himself.

20           THE COURT:  That is up to Mr. Celani.  If he

21  wants to file motions, he will file the motions himself.

22  He is pro se.  He is representing himself.  I think the

23  wise thing would be to permit you to file the motions but

24  this is up to him.

25           THE DEFENDANT:  Your Honor, we are in a question

1　here of semantics.  When you say file the motions, do you

2　mean literally type them and send them in?  Or do you mean

3　write them and author them?

4　　　　　　　THE COURT:  Both.

5　　　　　　　THE DEFENDANT:  I want to write and author my

6　own motions.

7　　　　　　　As far as standby counsel processing them,

8　because I don't want to be sending in a bunch of things

9　that are handwritten, if he is going to process them and

10　file them by Pacer, that is fine with me.

11　　　　　　　THE COURT:  Okay.  Then you will work it out

12　with Mr. Miller.

13　　　　　　　THE DEFENDANT:  Yes.

14　　　　　　　MR. MILLER:  We will work it out, Judge.

15　　　　　　　THE COURT:  Okay.  Do you have the waiver of

16　speedy trial form?

17　　　　　　　Let the record indicate that the defendant and

18　his standby counsel and the prosecutor have signed the

19　waiver of speedy trial form.  And I am signing an order

20　excluding the time between today, February 18, 2011,

21　until -- what is it?  April 15?

22　　　　　　　MR. LUNGER:  Yes, your Honor.

23　　　　　　　THE COURT:  April 15.

24　　　　　　　I'm inserting that date in here.  Is that all

25　right with you, Mr. Celani?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you want to take a look at it?

3          THE DEFENDANT:  No.

4          THE COURT:  Is that all right with you,

5     Mr. Miller?

6          MR. MILLER:  It is, your Honor.

7          THE COURT:  Mr. Lunger?

8          MR. LUNGER:  Yes, your Honor.

9          THE COURT:  Okay.  I am signing this order, with

10    the consent of the defendant, in the interest of justice,

11    and in the public interest.

12          There are many things that have to be done yet

13    in this case.  If not before, we will see you on April 15.

14          I would like to again thank Mr. Branden for all

15    his good work.  I really appreciate it.

16          MR. BRANDEN:  Thank you, Judge.

17          THE COURT:  You were fortunate to have him.  I

18    know you may not agree with me but I'm telling you.

19          And you are very fortunate to have Richard

20    Miller.  And I want to thank you very much for undertaking

21    this matter.

22          MR. MILLER:  Yes, sir.

23          THE COURT:  Okay.  April 15.

24          MR. MILLER:  Have a good day, your Honor.

25          (Proceedings adjourned at 12:15 pm.)