UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X Docket#
UNITED STATES OF AMERICA      : 09-cr-405(ADS)(GRB)
                              : 12-cr-183
                              :
        - versus -            : U.S. Courthouse
                              : Central Islip, New York
FREDERICK CELANI,             :
also known as                 :
"Sidney F. Levine,"           :
                  Defendant   : March 21, 2013
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**          **Loretta E. Lynch, Esq.**
                                 United States Attorney

                        BY:     **Michael Canty, Esq.**
                                 **Demetri Jones, Esq.**
                                 Assistant U.S. Attorney
                                 One Federal Plaza
                                 Central Islip, New York

**For the Defendant:**           **Robert P. LaRusso, Esq.**
                                 LaRusso & Conway LLP
                                 300 Old Country Rd
                                 Mineola, NY 11501

                                 **Andrew L. Oliveras, Esq.**
                                 26 Strangford Ct
                                 Oceanside, NY 11572

**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 740 Sharon Road
                                 Copiague, New York 11726
                                 Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

**Proceedings**

1      THE CLERK:  Calling 09-cr-505 and 13-cr-183,

2  United States of America v. Frederick Celani.

3          Counsel, state your appearances for the record.

4          MR. CANTY:  Good morning, your Honor.

5          On behalf of the United States, Michael Canty,

6  along with Assistant United States Attorney Demetri

7  Jones.

8          MS. JONES:  Good morning, Judge.

9          THE COURT:  Good morning.

10          MR. LARUSSO:  Good morning, your Honor.

11          Robert LaRusso for Mr. Frederick Celani, who is

12  in court.  Also with me is Mr. Andrew Oliveras, who was

13  appointed by Mr. Spatt to assist me --

14          MR. OLIVERAS:  Good morning.

15          MR. LARUSSO:  Judge Spatt to assist me.

16          THE COURT:  Excellent.

17          MR. OLIVERAS:  Good morning.

18          MR. LARUSSO:  May I just at the start say thank

19  you, Judge.

20          THE COURT:  No problem.

21          MR. LARUSSO:  I'm sure you understand I have to

22  be in White Plains and what you are doing is appreciated.

23          THE COURT:  We will get this done.  However, I

24  want to make sure what we're getting done.  I understand

25  that there has to e an arraignment on one of the cases;

3

**Proceedings**

1   is that right?

2           MR. CANTY:  Your Honor, there was a Rule 20

3   transfer from the Central District of Illinois, so the

4   defendant should enter a plea, an initial plea with

5   respect to the Rule 20 --

6           THE COURT:  Actually, I have that question.  Is

7   he pleading guilty to that charging instrument, too?

8           MR. CANTY:  The plea agreement includes one

9   count from the Central District of Illinois and one from

10  the Eastern District of New York.

11          THE COURT:  All right.  So, it's always

12  puzzling to me when I have to an arraignment to make the

13  defendant say not guilty to a document that two minutes

14  later he is going to tell me he is guilty potentially.

15  Is that right?

16          MR. CANTY:  I understand the -- yes, that often

17  happens.

18          THE COURT:  Would a waiver of arraignment be

19  sufficient?

20          MR. LARUSSO:  Yes, Judge.  I don't know if he's

21  allowed to plead not guilty under a Rule 20 transfer.  I

22  think the statute says he's got to plead guilty.

23          THE COURT:  To the extent that an arraignment

24  is technically required by the rules, Mr. LaRusso, does

25  your client waive that arraignment?

4

**Proceedings**

1          MR. LARUSSO:  He does, your Honor.

2          MR. CANTY:  Thank you, your Honor.

3          THE COURT:  Good enough?

4          MR. CANTY:  Yes.

5          THE COURT:  All right.  Good.

6          Mr. Celani, let me start with you, sir.

7   Understand my name is Magistrate Judge Brown.  I was

8   asked by Judge Spatt who is tied up in another matter to

9   handle your guilty plea.  You have no objection to my --

10  proceeding before me today; is that correct?

11         MR. LARUSSO:  Your Honor, I apologize, he's --

12  the last couple of months he's lost some hearing.

13         THE COURT:  Ah.

14         MR. LARUSSO:  I do apologize.  I should have

15  made that known to you as soon as possible.

16         THE COURT:  That's right.  Let me try again.

17  Maybe pull the mic closer to him, so I can hear him.

18         Mr. Celani, can you hear me now, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  So Judge Spatt is the

21  district judge assigned to this case.  He's asked me to

22  take your plea today.

23         Do you agree to do that before me instead of

24  before him is the first question?

25         THE DEFENDANT:  Yes, your Honor.

5

**Proceedings**

1          THE COURT:  Have you had enough time to talk to

2    Mr. Larusso?  Do you understand what's going on here

3    today?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  All right.  Good.  So you don't

6    need anymore time with Mr. LaRusso.  You're good; right?

7          THE DEFENDANT:  Um-hum.

8          THE COURT:  Okay.

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Good.  Thank you.

11          MR. LARUSSO:  Your Honor, I don't know if this

12    is appropriate.  I apologize.  There were two other

13    matters that I have had some discussion with the

14    government about that will be part of this agreement even

15    though it's not in writing.

16          We've agreed to allow it to go on the record

17    and supplement it.  I would just like to, if it's all

18    right with the government, one of them is that there's a

19    violation of probation out of Illinois that's being

20    covered by this plea.  In addition, I believe the

21    government will make a statement now that from my point

22    of view will end any kind of question regarding the entry

23    of the plea at this time.

24          Mr. Canty, can I ask you to make that

25    statement?

6

**Proceedings**

1          MR. CANTY:  Well, certainly, Judge.  With

2    respect to -- it wasn't probation.  He had a violation of

3    supervised release that was filed in the Central District

4    of Illinois and we've received affirmative

5    representations from that office that upon the

6    defendant's guilty plea here, they will dismiss the

7    violation of supervised release.  I've conveyed that to

8    defense counsel.

9          The other concern was -- and as it's outlined

10   in the plea agreement, the guidelines estimate that the

11   government has put in the plea agreement that we believe

12   that they are accurate and that a sentence within those

13   guidelines is appropriate, however we don't take a

14   position where within those guidelines the sentence

15   should be.  And that's outlined --

16         THE COURT:  Isn't that what you always do?

17         MR. CANTY:  Yes, your Honor.

18         THE COURT:  Yes, okay.  Good.

19         MR. LARUSSO: Well, Judge, the reason why it was

20   done is to give Mr. Celani some assurances that the

21   government will be recommending that sentence within that

22   range in case there is a different range that's

23   calculated by the probation department.  He just wanted

24   the government's assurance that they would stick to the

25   plea.  That's all.

7

**Proceedings**

1         THE COURT:  I'm not sure I understand that but

2 that said, Mr. LaRusso, let's go back to the first point.

3 These other charges from another district -- what is it a

4 probation violation did you say?

5         MR. CANTY:  It's a violation of supervised

6 release.

7         THE COURT:  A violation of supervised release.

8 Are we writing that into 8(a) of the written proffer

9 agreement because -- the plea agreement rather because if

10 we don't write it in, the agreement says this is what's

11 covered under 8(a) and it also says there are no other

12 agreements between the parties.

13         MR. LARUSSO:  Judge, I don't think it's

14 necessary to write it in, if we agree that this

15 transcript of this proceeding will be part and parcel of

16 the written agreement.  I have no problem in going

17 forward with those terms.

18         MR. CANTY:  We have no objection, your Honor.

19         THE COURT:  Okay, as long as everyone agrees,

20 we can proceed.  All right.

21         So, let me start with Mr. Celani.  Mr. Celani,

22 before accepting or recommending acceptance of your plea

23 -- sir, if you don't hear me at any point, let me know.

24 Okay?

25         THE DEFENDANT:  Um-hum.

8

**Proceedings**

1          THE COURT:  Before accepting or recommending

2     the acceptance of your plea, there are a number of

3     questions I must ask to assure myself that it's a valid

4     plea.  If you don't understand any of my questions,

5     please say so and I will reword or rephrase the question;

6     okay?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Could you swear in the

9     defendant, please.

10    **F R E D E R I C K   C E L A N I ,**

11         **called as a witness, having been first duly sworn,**

12         **was examined and testified as follows:**

13         THE CLERK:  I need you to state and spell your

14    name for the record.

15         THE DEFENDANT:  Frederick Celani, F-r-e-d-i-c-

16    k, last name is C-e-l-a-n-i.

17         THE COURT:  Mr. Celani, the first thing you

18    have to understand that now you've been sworn, the

19    answers that you give to my questions will be subject to

20    the penalties of perjury if you make a false statement.

21         Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  How old are you, sir?

24         THE DEFENDANT:  64.

25         THE COURT:  Are you a citizen of the United

9

**Proceedings**

1   States?

2           THE DEFENDANT:  Am I what, sir?

3           THE COURT:  A citizen of the United States.

4       MR. LARUSSO:  Citizen of the United States.

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Okay.  Good.  How far did you go in

7   school?

8           THE DEFENDANT:  Three years of college.

9           THE COURT:  Are you presently or have you

10  recently been under the care of a physician or a

11  psychiatrist?

12          THE DEFENDANT:  Not a psychiatrist; a

13  physician, yes.

14          THE COURT:  For what?

15          THE DEFENDANT:  I had a stroke about fifteen

16  months ago and I have high blood pressure and diabetes.

17          THE COURT:  Is your mind clear today?

18          THE DEFENDANT:  Pardon me, sir?

19          THE COURT:  Is your mind clear today? Do you

20  understand --

21          MR. LARUSSO:  Is your mind clear?

22          THE DEFENDANT:  Oh, yes, sir.  Yeah.

23          THE COURT:  Do you understand what's happening

24  here?

25          THE DEFENDANT:  Oh, sure.

10

**Proceedings**

1          THE COURT:  Okay.  Good. I am just concerned

2   when you mentioned a stroke, has that affected your

3   ability to understand what's happening?

4          THE DEFENDANT:  Absolutely.

5          THE COURT:  Absolutely that -- I'm sorry.  You

6   can understand what's happening here today

7   notwithstanding the fact that you had a stroke.

8          Is that right?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right.  Good.

11          In the past 24 hours, have you taken any

12   narcotic, medicine or pills or drunk any alcoholic

13   beverages?

14          THE DEFENDANT:  Narcotics, no.  I took you

15   know, the stuff for my diabetes.

16          THE COURT:  Okay.

17          THE DEFENDANT:  But that's not a narcotic.

18          THE COURT:  Right.  It doesn't affect your

19   mind, right?

20          THE DEFENDANT:  No.  No, sir.

21          THE COURT:  Okay.  Good.  Have you ever been

22   hospitalized or treated for narcotics addiction?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Your mind is clear today?  Your

25   mind is clear today?

11

**Proceedings**

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And Mr. LaRusso, have you discussed

3   this matter with your client?

4          MR. LARUSSO:  I have, your Honor.

5          THE COURT:  And does he understand the rights

6   he will be waiving by pleading guilty?

7          MR. LARUSSO:  He does, your Honor.

8          THE COURT:  And is he capable of understanding

9   the nature of these proceedings?

10          MR. LARUSSO:  He is, your Honor.

11          THE COURT:  And any doubt as to his competency

12   to plead guilty?

13          MR. LARUSSO:  No, your Honor.

14          THE COURT:  All right.  So, first of all you

15   have to understand you have the right to plead not

16   guilty.

17          You understand that; right?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And if you plead not guilty, under

20   the Constitution and laws of the United States, you are

21   entitled to a speedy and public trial by jury with the

22   assistance of counsel on the charges.

23          Do you understand?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  At the trial, you would be presumed

**Proceedings**

1    to be  innocent and the government would have to overcome

2    that presumption and prove you guilty by competent

3    evidence and beyond a reasonable doubt and you would not

4    have to prove that you were innocent.  And if the

5    government were to fail, the jury would have the duty to

6    find you not guilty.

7              Do you understand?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  In the course of the trial, the

10   witnesses for the government would have to come to court

11   and testify in your presence.  And your counsel would

12   have the right to cross-examine the witnesses for the

13   government, to object to the evidence offered by the

14   government and to offer evidence on your behalf.

15             Do you understand?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And if there were witnesses who

18   were reluctant to come to trial, your lawyer could

19   subpoena them and make them come to court.

20             Do you understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  At a trial, while you would have

23   the right to testify if you chose to do so, you would not

24   be required to testify.  Under the Constitution of the

25   United States, you cannot be compelled to incriminate

**Proceedings**

1  yourself.  If you decided not to testify, the Court would

2  instruct the jury that they may not hold that against

3  you.

4          Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  If you plead guilty and I recommend

7  acceptance of that plea, you will be giving up your

8  constitutional rights to a trial and the other rights

9  I've just discussed.  There will be no further trial of

10 any kind and no right to appeal or collaterally attack at

11 any time the question of whether you're guilty or not.  A

12 judgment of guilty will be entered on the basis of your

13 guilty plea which judgment can never be challenged.

14 However, you may have the right to appeal the sentence.

15         Do you understand?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  So on the question of guilt or

18 innocence, if you plead guilty, that's it.

19         Do you understand?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  If you plead guilty, I will have to

22 ask you questions about what you did in order to satisfy

23 myself that you are guilty of the charges to which you

24 seek to plead guilty and you will have to answer those

25 questions and acknowledge your guilt.  Thus, you will be

14

**Proceedings**

1  giving up your right not to incriminate yourself.

2  Do you understand that?

3  THE DEFENDANT: Yes, sir.

4  THE COURT: Are you willing to give up your

5  right to a trial and the other rights I have just

6  discussed?

7  THE DEFENDANT: Yes, sir.

8  THE COURT: Can you outline the plea agreement,

9  please.

10  MR. CANTY: Yes, your Honor. The defendant

11  will plead guilty to conspiracy to commit wire fraud with

12  respect to 09-cr-405, which is --

13  THE COURT: Counsel, just pull the mic a little

14  closer.

15  MR. CANTY: Sorry -- which is a superseding

16  indictment before Judge Spatt. The defendant will also

17  plead guilty to money laundering in connection with the

18  indictment that was transferred from the Central District

19  of Illinois which is docket number 13-cr-183.

20  Would you like me to go through the guideline

21  calculation or the --

22  THE COURT: Go ahead, please.

23  MR. CANTY: Yes. The government has estimated

24  that the defendant's total guideline offense level is 33.

25  However, by pleading guilty he will receive a two level

**Proceedings**

1    reduction if warranted at the time of sentencing which

2    brings his adjusted offense level to 31 and by pleading

3    guilty today, will move for an additional one point

4    reduction for a total offense level of 30.

5              Based on the defendant's criminal history

6    category of four, the government estimates that his range

7    of imprisonment is 135 to 168 months.

8              THE COURT:  Okay.  Can you outline the elements

9    of the offenses, please?

10             MR. CANTY:  Yes, with respect to the conspiracy

11   to commit wire fraud, that the defendant used wires that

12   traveled in interstate commerce to commit a fraud.

13   Specifically, through -- he conspired with other

14   individuals to engage in a conspiracy involving Rainmaker

15   managed properties.  Through this conspiracy, they made

16   fraudulent statements to individuals that their

17   investments would be used for the purposes of investing

18   in assisted living facilities when, in fact, the

19   defendant knew that the money was not being used to

20   invest in assisted living facilities; that the money was

21   being used for himself or to pay back the investors.  It

22   was a Ponzi scheme.

23             With respect to the money laundering, the

24   defendant on or about May 1, 2001, made a financial

25   transaction that occurred in interstate commerce where he

16

**Proceedings**

1   took a check, number 1234, from Morton Community Bank,

2   account number 123-188 and transferred that to an RK

3   Dickson for the purposes of leasing a copying machine.

4            He used this copy machine to further continue a

5   fraud that he was committing where he was holding himself

6   out to be a reverend that was able to engage in legal

7   work.

8            THE COURT:  Did you as a reverend?

9            MR. CANTY:  As a reverend, yes.

10           THE COURT:  All right.

11           MR. CANTY:  He said that he was reverend that

12   could engage in legal work and he would produce paperwork

13   and legal documents on behalf of incarcerated defendants

14   that he would then, in turn, turn over to them so the

15   defendants could file them pro se.

16           He used the money from the fraud to purchase

17   the copy machine and then used the copy machine to

18   further continue the fraud by producing additional

19   material that could be mailed out.

20           Those are the two charges for which the

21   defendant is pleading guilty to today.

22           THE COURT:  Okay.  So, Mr. Celani, I asked the

23   assistant to lay out those are the charges that is being

24   suggested you may wish to plead guilty.

25           Do you understand that those are the charges?

**Proceedings**

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And you understand the elements of

3    those charges as the prosecutor just laid them out?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now let's talk about the maximum

6    sentences and fines.  So, on the conspiracy to commit

7    wire fraud, there's a maximum term of imprisonment of

8    twenty years.  There is no minimum term of imprisonment

9    on that count.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And on that count, there is a

13    maximum term of supervised release of three years.

14          Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Do you know what supervised release

17    is?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  It's a kind of probation or parole,

20    right?

21          THE DEFENDANT:  Um-hum.

22          THE COURT:  So, if you get out after serving

23    time in jail, you are on supervised release for a maximum

24    of three years.  And if you violate the terms and

25    conditions of that release, meaning you commit another

18

### Proceedings

1  crime, you do something else wrong, you could go back to

2  jail for another two years.

3         Do you understand that?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  All right.  There's a maximum fine

6  -- wow, it's either $250,000 or two times the gross gain

7  derived from the offense.

8         Counsel, do we know which is more at this

9  point?

10        MR. CANTY:  The -- it appears that it would be

11 two times the gross pecuniary gain derived from the

12 offense.

13        THE COURT:  And how much money do we think that

14 would be?

15        MR. CANTY:  The total loss -- well, there was

16 money that was paid back.  The SEC conducted an

17 investigation to -- the defendant was able to clawback

18 approximately between forty -- between forty-five and

19 fifty percent of the money.  The total loss with respect

20 to the Rainmaker Assisted Living scheme was approximately

21 $6 million.

22        THE COURT:  Okay.  So that means that there

23 could be a fine as much as $12 million.

24        Do you understand that?

25        THE DEFENDANT:  Yes, sir.

19

**Proceedings**

1          THE COURT:  All right.  And then there's a

2    restitution, meaning you have to pay back victims in an

3    amount to be determined by the Court.

4          Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  All right.  There will be a $100

7    special assessment which you have to pay.  And there's

8    also criminal forfeiture as to Count 1.

9          Do you understand all of that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Now on the money laundering charge,

12   there's a maximum term of imprisonment of twenty years

13   and no minimum term of imprisonment.

14         Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  A maximum supervised release term

17   again is three years with two years that you could serve

18   again if you violate the conditions.

19         Do you understand?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Maximum fine will probably be the

22   same number?

23         MR. CANTY:  It's actually significantly lower.

24   It's -- the loss was between $170,000 and $190,000; so it

25   would be twice that amount.

20

**Proceedings**

1          THE COURT:  Well, no, actually it looks like

2     then the maximum fine will be $500,000.

3          MR. CANTY:  Oh, $500,000 if that's the --

4          THE COURT:  Right.

5          MR. CANTY:  Yes.

6          THE COURT:  So, there's a fine of up to

7     $500,000.

8          Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Again, there will be restitution

11     that will be determined by Judge Spatt.

12          Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And again, there will be another

15     separate $100 special assessment that you have to pay.

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Now, have you discussed

18     the sentencing guidelines with your attorney?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  The first thing I want to say about

21     the sentencing guidelines is it's something that the

22     Court must consider but they are not binding.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  So earlier today Mr. LaRusso was

### Proceedings

1  asking, he wanted the government to stand by its estimate

2  and so forth.  These are all just estimates.  Everybody

3  could be wrong.

4          Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  The only guarantee you have with

7  regard to your sentence is that statutory maximum; right?

8  The twenty years on each count.

9          Do you understand?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Anything else, there's no

12  guarantee.

13          Do you understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Good.  Do you understand that even

16  if the sentence is more severe than you expect, you're

17  still going to be bound by a plea of guilty if you take

18  one today.

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  You can't say, oh, I got more time

23  than I wanted, Judge.  I want that plea back.  It doesn't

24  happen that way.

25          Do you understand?

22

## Proceedings

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you have any questions you want

3   to ask me or your attorney about this charges, about

4   anything we just discussed?  Do you want to go through

5   anything else?

6        THE DEFENDANT:  No, sir.

7        THE COURT:  Are you ready to plead guilty?

8        THE DEFENDANT:  I'm sorry, sir?

9        THE COURT:  Are you ready to plead guilty?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  And Mr. LaRusso --

12        MR. CANTY:  Your Honor, just with respect to

13   the statutory maximum, the -- under the law, the two

14   sentences may -- the district court may impose a sentence

15   to run consecutively, so just he knows that.

16        THE COURT:  I thought I made that clear but I

17   will say that.

18        MR. CANTY:  Thank you very much.

19        THE COURT:  Okay.

20        MR. LARUSSO:  Judge, he just wants me to repeat

21   what was said.

22        THE COURT:  Yeah, I --

23        MR. LARUSSO:  Can I take a second?

24        THE COURT:  Go ahead.  But I --

25        MR. LARUSSO:  The Court is probably going to do

23

**Proceedings**

1    it anyway.

2    THE COURT:  I am going to do it anyway.  I

3    thought I made this point clear but if I didn't, those

4    two maximum terms, the twenty years on each count could

5    run consecutively.  So, ultimately the upper limit for

6    you here could be forty years.

7    Do you understand that?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  Okay.

10   MR. CANTY:  Thank you, your Honor.

11   THE COURT:  Good enough?

12   MR. CANTY:  Than you.

13   MR. LARUSSO:  Your Honor, I think that's

14   actually in the plea agreement on page 3.

15   THE COURT:  Okay.

16   MR. LARUSSO:  Yes.

17   THE COURT:  But it's good that we know that Mr.

18   Celani --

19   MR. LARUSSO:  Absolutely.

20   THE COURT:  -- understands it.

21   Mr. LaRusso, any legal reason why the defendant

22   -- oh, do you need something?

23   (Counsel and client confer)

24   MR. LARUSSO:  Mr. Celani -- a practical

25   question, Judge.  He says we're still agreeing that the

24

**Proceedings**

1   guideline range is calculated in the plea agreement is

2   135 to 168 and that promises that were made on the record

3   earlier before we started this is still in effect.  That

4   was his concern because when you said that, they could go

5   higher --

6           THE COURT:  But, sir, that's true.  But what I

7   want you to understand is this.  When you go to

8   sentencing before Judge Spatt, it might be that Mr.

9   Larusso and the government counsel both stand up and say

10  Judge, we think the right guideline range is 135 months.

11  We both -- we all agree on that.  The judge can say,

12  that's nice; I disagree or I agree but I want to sentence

13  you to more time anyway.  That can all happen and you

14  have to understand that that's a risk here.

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  So, the last thing was not

18  intended to change any aspect of the agreement but I just

19  want you to understand that the only legal assurance you

20  have are those statutory maximums.

21          THE DEFENDANT:  I understand.

22          THE COURT:  Okay.  Any legal reason why he

23  should not plead guilty?

24          MR. LARUSSO:  No, your Honor.

25          THE COURT: Are you satisfied with your legal

**Proceedings**

1   representation, meaning that you have attorneys here.

2   Are you satisfied with what they've done for you up to

3   this point?

4           THE DEFENDANT:  Mr. LaRusso and Mr. Oliveras

5   are excellent.

6           THE COURT:  Very good.

7           What is your plea -- let's first do Count --

8   the sole count of the superseding indictment here in the

9   eastern district which charges the wire fraud conspiracy,

10  what is your plea to that count, sir?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  Okay.  And as to -- we're doing

13  Count 9, correct, counsel?

14          MR. CANTY:  Yes, your Honor.

15          THE COURT:  Count 9 of the indictment from the

16  Central District of Illinois, what is your plea?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  Are you making these pleas of

19  guilty voluntarily and of your own free will?

20          THE DEFENDANT:  They are voluntary.

21          THE COURT:  Okay. And has anyone threatened or

22  forced you to plead guilty?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Other than the agreement with the

25  government that we stated on the record today and as

**Proceedings**

1  written in the plea agreement, has anyone made any

2  promises that caused you to plead guilty?

3  THE DEFENDANT:  No, sir.

4  THE COURT:  All right.  Has anyone made any

5  promise as to you as to what your sentence may be?

6  THE DEFENDANT:  No, sir.

7  THE COURT:  Okay.  Understand attorneys can

8  give you an estimate, right?  They could say this is what

9  I think but it can't be a promise because nobody can

10  promise that.

11  Do you understand?

12  THE DEFENDANT:  Yes, sir.

13  THE COURT:  All right.  So let's start -- shall

14  we do the fraud first?  Does that make more sense?

15  MR. CANTY:  The conspiracy; yes --

16  THE COURT:  Okay.

17  THE COURT:  So --

18  MR. CANTY:  -- which is Count 1 of the eastern

19  district --

20  THE COURT:  Yes.  So starting with the wire

21  fraud conspiracy, which is the sole count of the

22  indictment in the Eastern District of New York -- all

23  right?  That's the sole count.

24  MR. CANTY:  There are additional counts,

25  your Honor.  There are a total of eight counts in the

**Proceedings**

1   indictment.

2            THE COURT:  Wait a minute.  The Eastern

3   District of New York indictment?

4            MR. CANTY:  It's the superseding indictment.

5   Do you have --

6            THE COURT:  Could you hand that up, please?

7            MR. CANTY:  I have -- wait.

8            THE COURT:  Stand by, sir.  Sorry about that.

9   We're having technical difficulties.

10           (Pause)

11           THE COURT:  Okay.  Sorry about that.  So, with

12   regard to Count 1 of the superseding indictment in the

13   Eastern District of New York, which charges a wire fraud

14   conspiracy -- do I have that right, counsel?

15           MR. CANTY:  Yes, your Honor.

16           THE COURT:  With regard to Rainmaker Investors,

17   can you tell me what you did in your own words that makes

18   you guilty of that count, sir?

19           THE DEFENDANT:  Strictly as to Count 1 or an

20   overview of the whole situation?

21           THE COURT:  You can give me both if you like.

22           THE DEFENDANT:  I think you need to know it

23   all.

24           THE COURT:  If it's easier, do the whole thing.

25   Go ahead.

28

**Proceedings**

1      THE DEFENDANT:  I practiced law in the City of

2   New York unlicensed for approximately five years which

3   was known as the Freedom Forum of New York City and the

4   Freedom Forum eventually engaged in a thing called

5   Rainmaker Realty Partners, which was a -- kind of like a

6   limited partnership to obtain money from people to build

7   nursing homes.

8      And primarily it was a Ponzi scheme.  There

9   never were any nursing homes that were going to be

10  established and the money was used -- portions of the

11  money were used to pay back investors, a fake income

12  under investment.

13     And a portion of the money was left in the

14  bank. I don't remember the exact amount but it was in the

15  $3 million range.  And portions of it, I received and

16  portions of it other people received.

17          (Counsel and client confer)

18     THE COURT:  About when did that happen?

19     THE DEFENDANT:  Oh, from December of 2004 to

20  August of 2005.

21          MR. LARUSSO:  Where?

22     THE DEFENDANT:  In the Eastern District of New

23  York.

24     THE COURT:  Okay.  When you say that, what do

25  you mean?  Where were you?

29

### Proceedings

1    THE DEFENDANT:  I'm sorry, sir?

2    THE COURT:  In Long Island, Brooklyn, Queens?

3  Where were you?

4    MR. LARUSSO:  Where were your offices?

5    THE DEFENDANT:  In New York City on 23rd and

6  6th.

7    MR. LARUSSO:  And moved into Long Island later?

8    THE DEFENDANT:  Yes, there was a branch in --

9  oh, boy, give me a second here -- Oakdale, Long Island.

10    THE COURT:  Okay.

11    (Counsel and client confer)

12    MR. CANTY:  Your Honor, with respect to the

13  jurisdiction in the eastern district, the defendant

14  alleged that the properties that he was building were

15  located in the Eastern District of New York.  And there

16  were -- negotiations were made with victims that were

17  from the Eastern District of New York.

18    THE COURT:  Does that sound about right, sir?

19    THE DEFENDANT:  Just a --

20    THE COURT:  Go ahead.

21    MR. CANTY:  And the wires and mailings occurred

22  within the Eastern District of New York.

23    (Counsel and client confer)

24    THE DEFENDANT:  One of the -- one of the

25  proposed properties was located in -- I call it Sunken

30

**Proceedings**

1   Meadow, I don't know what the name of the city is but

2   it's in Long Island here.

3           THE COURT:  Okay.

4           THE DEFENDANT:  And there was another one in

5   Belle Harbor, New York.  I think it was Beach 134th

6   Street, if I remember correctly.  And during all of those

7   various machinations regarding those two properties, we

8   were making telephone calls and sending Internet -- you

9   know, over the wires and engaging in banking transactions

10  by wire.

11          THE COURT:  Okay.  Very good.  Is that

12  sufficient on that count?

13          MR. CANTY:  Your Honor, just with respect to

14  that count, does the defendant admit that he made

15  material false representations to investors to induce

16  them to send him money for the Rainmaker Assisted Living

17  Facilities knowing that the money was never going to be

18  used and did he guarantee twenty-five percent return on

19  their investment if they invested in what he purported to

20  be Rainmaker Assisted Living Facilities?

21          THE COURT:  That's kind of compound question

22  but if you could understand and --

23          THE DEFENDANT:  Could I just say I agree with

24  what he said?

25          THE COURT:  That's fine if --

31

### Proceedings

1            THE DEFENDANT:  That's fine; yes.

2            THE COURT:  You agree with the whole thing?

3            THE DEFENDANT:  Yes, I agree with it.

4            THE COURT:  Very good.  All right.  Is that

5    sufficient on Count 1 of the eastern district indictment?

6            MR. CANTY:  Yes, your Honor.  Thank you.

7            THE COURT:  All right.  Shifting to Count 9 of

8    the District of Illinois indictment and this involves,

9    sir, you having the a/k/a Reverend Bob Hunt and the

10   discussion about a check being used for a lease of a

11   copier from the Morton Community Bank.

12           Why don't you tell me in your own words what

13   you did to be guilty of that count?

14           THE DEFENDANT:  Kind of typical to what was

15   done in New York City, I ran a law firm in Peoria,

16   Illinois and this law firm was couched in -- within the

17   guise of a civil rights organization within a church and

18   I also managed the church.

19           We were engaged in doing legal work for

20   hundreds of inmates all over the United States in state

21   and federal prisons.  Probably mailing-wise, we touched

22   every single federal prison and every single state prison

23   coast-to-coast in all fifty states.  I would imagine in

24   the course of that approximately one year period, we

25   probably mailed 10,000 different pieces to 10,000

### Proceedings

1  different prisoners, that's my guess.  There's a list in

2  the back of this, that -- I didn't count it but there's a

3  substantial number of inmates who became clients of the

4  organization that we were ostensibly representing in

5  post-conviction proceedings.

6          THE COURT:  Okay.

7          THE DEFENDANT:  Some of that was done, some of

8  it was not done.  Needless to say, there's a whole bunch

9  of unhappy inmates coast-to-coast who would like to see

10  me as soon as possible.  And it says in the count that I

11  used the money to obtain a copier, which is true, I did.

12          THE COURT:  Okay.

13          THE DEFENDANT:  I also used the Internet.  I

14  mean, I readily don't know how many times, Judge, but I

15  would say thousands of times.

16          THE COURT:  Okay.  Let me ask you this question

17  though, I just want to make sure I understand the

18  underlying scheme as such, right?  When you say some of

19  the work was done, some of it wasn't done, when you were

20  soliciting the monies, did you know you weren't going to

21  do the work?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  Counsel, anything else?

24          MR. CANTY:  Again, with respect to the material

25  misrepresentations to further the fraud, you claimed that

33

**Proceedings**

1  your region foundation was celebrating its twenty-fifth

2  anniversary and that you had been in the business of

3  filing these -- this paperwork for a number of years

4  when, in fact, you had just started that and that you had

5  no experience in filing these types of briefs for an

6  extended period of time.

7            Is that correct?

8            THE COURT:  Did you hear him?

9            THE DEFENDANT:  Same as last time; I mean, I

10  agree with what he is saying.

11            THE COURT:  You heard what he said?

12            THE DEFENDANT:  Pretty much.

13            THE COURT:  Yes?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  Okay.  Let's just make it clear.  I

16  think what he was saying was that you were making certain

17  misrepresentations about how long the business had been

18  in operation, that you were regularly doing these things,

19  you were around for twenty-five years, you were operating

20  out of a church.

21            Do all those things make sense?

22            (Counsel and client confer)

23            THE DEFENDANT:  Yes, sir, I agree with that.

24            MR. CANTY:  And your Honor one additional

25  question, the use of the copy machine was -- well, the

34

**Proceedings**

1    lease was purchased using money that he had obtained

2    through this fraud and he used the copy machine to

3    further the fraud to create additional material that he

4    could mail out to prospective clients.

5              THE DEFENDANT:  Yes, sir, that's correct.

6              THE COURT:  You heard that; yes?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Okay.

9              MR. CANTY:  Thank you, your Honor.

10             THE COURT:  All right.  Mr. Canty, though you

11   may have done that with the last question you asked, why

12   don't you outline the government's proof had these

13   matters proceed to trial.

14             MR. CANTY:  If we had gone to trial with

15   respect to the conspiracy charged in the Eastern District

16   of New York, we would have called witnesses that said

17   they were solicited by the defendant and others, his co-

18   conspirators and induced to invest money with Rainmaker

19   Assist Living Facilities under the belief that Rainmaker

20   was in the business of creating Assisted Living

21   Facilities.

22             They were -- they invested their money, the

23   victims invested their money because the defendant made

24   material false representations that he had individuals

25   lined up to live in the facilities.  He had facilities

Transcriptions Plus II, Inc.

35

### Proceedings

1   lined up.  He was in the process of getting permits to

2   open up assisted living facilities.  When, in fact, that

3   was all lies; every one of those was lies.

4          He then took the money and paid back initial

5   investors with either their own money or new investor

6   money claiming that this money that they were getting

7   back in interest was procured by the success of the

8   Rainmaker Assisted Living concept.

9          THE COURT:  The proof would include, I presume

10  witness statements, financial documents --

11         MR. CANTY:  Well certainly we would have the

12  bank records.  We would have the wire transfers of money

13  that went from individual investors, the checks that were

14  sent, the bank account records from the victims

15  indicating that they had made money.  We also have the

16  wire transfers and the checks that the defendant actually

17  sent claiming to be interest payments.  We have e-mails

18  that the defendant sent to individual investors.

19         So, that's the proof we would introduce with

20  respect to the conspiracy in the Eastern District of New

21  York.

22         With respect to the Central District of

23  Illinois, the evidence would consist of victims claiming

24  that they had received solicitations from the defendant,

25  that they had sent money to the defendant because their

36

**Proceedings**

1   belief that he was going to do this legal work on behalf

2   of their incarcerated family members, that they did so

3   because the defendant made false representations that he

4   had been in the business, that he had been successful

5   doing that.

6            We would introduce the check specifically that

7   was used to pay for this copy machine and materials that

8   were sent to individual family members of incarcerated

9   defendants that were created as a result of the defendant

10   leasing that copy machine.

11           THE COURT:  Okay.  And because -- I'm not sure

12   I asked the defendant this and my geography knowledge of

13   Illinois is limited, what proof would you have that this

14   occurred in the appropriate --

15           MR. CANTY:  Okay.

16           THE COURT:  -- district in Illinois.

17           MR. CANTY:  As by the defendant's own admission

18   but we would introduce evidence that this all happened in

19   Peoria, Illinois, which is located in the Central

20   District of Illinois.

21           THE COURT:  Very good.  Mr. LaRusso, anything

22   further from you?

23           MR. LARUSSO:  No, your Honor.  Other than an

24   application with your permission to get a copy of the

25   proceedings --

**Proceedings**

1       THE COURT:  Let me --

2       MR. LARUSSO:  -- considering that there were

3  some representations made that --

4       THE COURT:  Let me finish this first but

5  anything else before I rule on the plea?

6       MR. LARUSSO:  Oh, nothing further, Judge.  I'm

7  sorry.

8       THE COURT:  Anything else from the government?

9       MR. CANTY:  No.

10      THE COURT:  All right.

11      So, based upon the information that's been

12  given to me, I find that the defendant is acting

13  voluntarily, that he fully understands his rights and the

14  consequences of his plea and that there is a factual

15  basis for the plea.  I, therefore, will accept the plea

16  of -- or recommend the acceptance of plea of guilty as to

17  Counts 1 in the eastern district indictment and Count 9

18  of the Illinois indictment and recommend the same to

19  Judge Spatt.

20      Mr. LaRusso, you had an application?

21      MR. LARUSSO:  Well actually, two; the

22  government --

23      THE COURT:  Just pull the mic close to make

24  sure we get you on the record.

25      MR. LARUSSO:  Judge, there are actually two;

**Proceedings**

1   the government had asked us over the last couple of days

2   to vacate some subpoenas that had been sent out in

3   anticipation of trial.  I would like to make a formal

4   application at this time that the subpoenas that were

5   signed by the Court and issued be vacated officially, so

6   that if anybody calls or there's any need to contact the

7   agencies and/or individuals, they can tell them that they

8   have been vacated.

9            THE COURT:  So vacated.

10           MR. LARUSSO:  Okay.  And the second thing is,

11   Judge, since we've added some additional aspects to the

12   plea agreement orally on the record and I represent Mr.

13   Celani CJA, may I ask the Court for permission to use CJA

14   funds to get a copy of that transcript?  I think that

15   should be made available.

16           THE COURT:  I think that makes sense and also

17   put on the record that although I sealed the transcript

18   -- did I seal the -- I did not seal this transcript,

19   right?  No, okay, sorry.  Never mind.

20           MR. LARUSSO:  No.

21           THE COURT:  All right.  Good.  Yes, I think

22   that's fine.

23           MR. LARUSSO:  Judge, thank you.

24           MR. CANTY:  Your Honor, I know that you did it

25   orally on the record but did the defendant -- the

39

**Proceedings**

1   government just wants to ensure that the defendant signed

2   a referral order to allow this court to take --

3          THE COURT:  I believe we covered that but let

4   me check.

5          MR. CANTY:  He did; great.  Thank you, your

6   Honor.

7          THE COURT:  Yes.  Lauren knows the answer and

8   apparently it's yes.

9          Anything further?

10          MR. LARUSSO:  Your Honor, Mr. Celani just

11   wondered if there was a sentencing date set.  I don't

12   know if it has.

13          THE COURT:  I believe it's approximately July

14   19th at 11:30.

15          MR. LARUSSO:  Approximately?

16          THE COURT:  Yes.  Anything else?

17          MR. LARUSSO:  That's fine, Judge.  Thank you.

18          MR. CANTY:  All right.  Thank you.

19

20               (Matter concluded)

21                    -o0o-

22

23

24

25

40

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **22nd** day of **April**, 2013.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.